# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-3012

MARILYN INNERFELD,

    Plaintiff,

vs.

BARON INVESTMENTS, LLC,
d/b/a Baron Education, and TARIRO GORONGA, an individual.

    Defendant

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Marilyn Innerfeld, by and through her counsel, Baird Quinn, LLC, hereby alleges claims against Defendant Baron Investment, LLC, d/b/a Baron Education, ("Baron"), and Tariro Goronga ("Goronga") as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 by virtue of the federal questions presented and this action is further authorized and instituted pursuant to 29 U.S.C. § 626(c). This Court further has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over Defendant Baron because it conducted business in Colorado and employed Plaintiff in Colorado, thus creating sufficient minimum

contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice.

3. This Court has personal jurisdiction over Defendant Goronga because he resided and conducted business in Colorado, thus creating sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice.

4. Venue is proper in this Court as the unlawful employment practices and conduct alleged were committed within the jurisdiction of the United States District Court for the District of Colorado.

## II.   PARTIES

5. Plaintiff Marilyn Innerfeld is a Colorado resident who at the relevant time lived in Evergreen, Colorado. At all relevant times, she has been a resident of the State of Colorado.

6. Defendant Baron is a Colorado corporation that regularly conducts business within the State of Colorado. Its primary place of business is 1658 Cole Boulevard, Suite 290, Lakewood, Colorado 80401.

7. Defendant Goronga is a Colorado resident who at all relevant times has lived in Colorado and still currently resides in Colorado.

## III.   FACTUAL ALLEGATIONS

8. Plaintiff started working for Baron in 2008 and worked her way up to Vice-President of Human Resources.

9. Plaintiff was employed by Baron from 2008 to June 1, 2022.

10. Plaintiff consistently received favorable performance evaluations and positive feedback regarding her performance.

11. In fact, shortly after the company was purchased in December 2021 and Tariro Goronga was installed as the Chief Executive Officer, Mr. Goronga pleaded with Plaintiff to stay with the company for at least one year past the seller's scheduled departure because Plaintiff was so valuable to him and the company.

12. Plaintiff was committed to ensuring that Baron maintained a non-hostile work environment for all employees and complied with the equal employment opportunity laws, including Title VII of the Civil Rights Act of 1964.

13. On or about April 8, 2022, Plaintiff received a report of inappropriate behavior of a sexual nature by Mr. Goronga.

14. Plaintiff conveyed the report to Christine Lenick, Chief Operating Officer at the time, and also interviewed the female employee who was the subject of the complaint for the purpose of determining the nature or extent of any inappropriate or illegal behavior by Mr. Goronga, protecting the employee from unlawful sexual harassment, and providing an oral and written report to Baron's Board of Directors which had supervisory authority over Mr. Goronga and ultimate responsibility for ensuring legal compliance.

15. The complained of conduct included Mr. Goronga caressing the complainant's arm, staring at the female employee and stating, "I am enjoying the view," and inviting her out to dinner after work on more than one occasion.

16. The complained of conduct also included Mr. Goronga repetitively instructing the female employee to take the stairs to get her steps to remain fit which caused the complainant to feel as if she had to disclose a medical condition.

17. Based on prior interactions with Mr. Goronga, Plaintiff believed that Mr. Goronga's conduct was a recurring, not isolated, problem.

18. Specifically, in January 2022, Mr. Goronga had taken the unusual step of interrupting an employee's onboarding meeting to tell a noticeably beautiful new, female employee to come to his office when the onboarding was complete.

19. Mr. Goronga never asked any other onboarding employees to his office.

20. This matter was brought to Plaintiff's attention at the time it happened.

21. At the time, Plaintiff advised Mr. Goronga that his conduct could be deemed inappropriate, and, in her efforts to oppose discriminatory practices, she raised with him the dynamics of a workplace power imbalance that he was creating under which a lower-level female employee acquiesces to unwelcome conduct from a senior manager.

22. Plaintiff specifically told Mr. Goronga that she was concerned that a power imbalance existed when he engaged in this type of behavior with a new female employee.

23. In addition, in approximately March 2022, Mr. Goronga told Plaintiff she was in good shape (demonstrating with his hands a curvy, female body shape), which she felt was the type of comment and action he only directed to women, and that was inappropriate.

24. As a result, in addition to relaying the current complaint, Plaintiff made the Board aware of these two prior incidents, including her own incident which Mr. Goronga made her uncomfortable and which she thought constituted sexual discrimination.

25. In Plaintiff's report, she drew the good-faith conclusion that Mr. Goronga's conduct violated the company's policy against sexual harassment as well as relevant law.

26. Plaintiff also specifically called out the power imbalance that was occurring because Mr. Goronga is in a position of power within the Company.

27. Plaintiff then recommended that Mr. Goronga be suspended pending a full investigation.

28. Plaintiff presented her report to the Board and Mr. Goronga.

29. The Board decided to turn the matter over to outside counsel for a full investigation.

30. As part of the investigation, Plaintiff was interviewed by outside counsel.

31. Not only did Plaintiff relay the sexual harassment complaint that had recently been lodged against Mr. Goronga regarding the female employee and provide all information from her internal investigation of the complaint, but Ms. Innerfeld also complained about the conduct to which she was subjected to and expressed her concern that Mr. Goronga had engaged in inappropriate, harassing behavior based on sex.

32. Plaintiff also raised with the outside counsel the January 2022 incident with the onboarded employee that Ms. Innerfeld felt constituted inappropriate conduct of a sexual nature.

33. In her efforts to oppose unlawful and discriminatory conduct occurring at the workplace, Plaintiff also told the outside counsel that she did not know if she would return to work if Mr. Goronga was allowed to return to work.

34. The investigation, or the Board's decision-making process, lingered for nearly two months.

35. On June 1, 2022, the Board reported to staff that there was no finding of sexual harassment and Mr. Goronga would be returning to the office the next day.

36. At the same time, the Board informed Plaintiff that it was accepting her resignation.

37. Plaintiff was stunned and responded that she had not resigned.

38. After the Board, without any basis, attempted to continue to assert that she had resigned, Plaintiff restated that she was not resigning and if they wanted her to leave, they would have to terminate her employment.

39. The Board then involuntarily terminated Plaintiff's employment on June 1, 2022.

40. When Plaintiff asked why her employment was being terminated, Board Member Bruce Moszcelt said because Mr. Goronga stated he could no longer work with the Plaintiff.

41. Mr. Goronga, for his own personal interest, convinced the Board and acted in concert with the Board, to involuntarily terminate her employment, because she engaged in activities protected by both Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act.

42. On or about July 7, 2022, Plaintiff filed a Charge of Discrimination, Charge No. 541-2022-03067, with the Equal Employment Opportunity Commissions ("EEOC"), which was dual filed with the Colorado Civil Rights Division ("CCRD"). Plaintiff subsequently amended her Charge.

43. A Notice of Right to Sue with respect to Plaintiff's Charge of Discrimination was issued on or about October 3, 2023, and Plaintiff filed the present action within ninety (90) days of receipt of same.

44. Plaintiff has met all administrative prerequisites prior to filing this action.

45. Plaintiff believes that the Board engaged in unlawful retaliation when it terminated her employment and has been damaged by Defendant's unlawful actions and seeks relief identified herein.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### RETALIATION
### IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

46. Plaintiff incorporates the allegations of this Complaint as if fully set forth herein.

47. Defendant Baron subjected Plaintiff to less favorable terms, conditions, and privileges of employment, and terminated her employment, because she participated in an investigation of sexual harassment and complained to management opposing practices that she believed constituted unlawful practices under Title VII.

48. Defendant Baron's conduct in subjecting Plaintiff to the above-described materially adverse employment actions in violation of Title VII had the effect of depriving Plaintiff of rights and privileges, and of employment itself, enjoyed by persons who have not engaged in activities protected by Title VII.

49. Defendant Baron acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages.

50. As a direct and proximate result of Defendant Baron's above-described discriminatory actions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and

economic damages including front pay and back pay. Plaintiff also seeks her attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF

### RETALIATION
### IN VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT

51. Plaintiff incorporates the allegations of this Complaint as if fully set forth herein.

52. Plaintiff participated in statutorily protected activity by participating in an investigation of sexual harassment and complained to management opposing practices that she believed constituted unlawful practices under CADA, including discrimination based on Plaintiff's sex.

53. As a result of Plaintiff's protected opposition to discrimination and harassment, Defendants retaliated against her by subjecting Plaintiff to less favorable terms, conditions, and privileges of employment, and terminated her employment in violation of the Colorado Anti-Discrimination Act ("CADA").

54. Defendant Goronga also aided and abetted the unlawful conduct as described above.

55. Defendants' conduct in subjecting Plaintiff to the above-described materially adverse employment actions, or aiding and abetting same, had the effect of depriving Plaintiff of rights and privileges, and of employment itself, enjoyed by persons who have not engaged in activities protected by CADA.

56. Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages.

57. As a direct and proximate result of Defendants' above-described discriminatory actions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front pay and back pay. Plaintiff also seeks her attorney's fees and costs pursuant as allowed by CADA.

## THIRD CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH CONTRACT

58. Plaintiff incorporates the allegations of this Complaint as if fully set forth herein.

59. Defendant Goronga, based on personal hostility against Plaintiff and based upon her protected activity as described above, interfered with the Plaintiff's employment contract with Defendant Baron by telling the Board he could no longer work with her which conduct induced the Board to terminate her employment.

60. The hostility arose out of Plaintiff's investigation of the sexual harassment complaint filed against him, her personal complaint of sexual harassment that was additionally raised against him, and her conclusion, shared with Defendant Baron's Board of Directors, that he had violated the company's policy against sexual harassment as well as applicable law.

61. Defendant Goronga intended for Defendant Baron to terminate Plaintiff's employment.

62. Plaintiff has been damaged by the tortious actions of Defendant Goronga by being deprived of income, continuing employment, and the opportunity for other employment benefits, in an amount to be proven at trial.

63. Plaintiff has suffered garden variety emotional distress as a result of Defendant

Goronga's tortious actions against her.

64. The tortious actions of Defendant Goronga as alleged above were engaged in intentionally, and with malice or with a reckless indifference to Plaintiff's rights.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor and against Defendants and award her all relief as allowed by law, including, but not limited to, the following:

a.  Actual economic damages as established at trial including back pay and benefits;

b.  Compensatory damages including, but not limited to, those for future pecuniary losses, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

c.  Front pay and benefits;

d.  Pre-judgment and post-judgment interest at the statutory rate;

e.  Attorneys' fees, costs and expenses; including expert witness fees, on all claims allowed by law; and

e.  Any further relief that the Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE.

DATED this 14th day of November, 2023.

        Respectfully submitted,

        BAIRD QUINN LLC


        BY: */s/ Beth Doherty Quinn*
        J. Mark Baird, #22276
        Beth Doherty Quinn, #28016
        2036 East 17th Avenue
        Denver, Colorado 80206
        Telephone: 303.813.4500
        Facsimile: 303.813.4501
        Email: jmb@bairdquinn.com
               bdq@bairdquinn.com

        *ATTORNEYS FOR PLAINTIFF*